HUDSON *v.* STATE.

Opinion delivered April 20, 1925.

1. HOMICIDE—ADMISSIBILITY OF DYING DECLARATION.—Admission of a statement of deceased as a dying declaration in a murder case was not error where it was shown that he realized that he was in a dying condition.

2 HOMICIDE—HARMLESS ERROR.—Admission of dying declaration tending to show murder, if erroneous, was not prejudicial where the jury found defendant guilty of involuntary manslaughter.

3. HOMICIDE—ABSTRACT INSTRUCTION—PREJUDICE.—Where the evidence in a murder case tended to show that defendant was guilty either of murder or voluntary manslaughter, an abstract instruction on involuntary manslaughter could not have prejudiced the defendant.

Appeal from Union Circuit Court; *L. S. Britt,* Judge; affirmed.

*H. W. Applegate, Attorney General,* and *John L. Carter,* Assistant, for appellee.

WOOD, J. In December, 1924, J. N. Hudson was indicted in the Union Circuit Court for the crime of murder in the first degree in the killing of one Louie Primm, in Union County, Arkansas. He was tried and convicted of the crime of involuntary manslaughter, and sentenced by judgment of the court to one year in the State Penitentiary, from which judgment he appeals.

The testimony adduced by the State tended to prove that the appellant and Primm had a fight about eight o'clock on Thanksgiving night. The appellant was

arrested, and, while he was being carried to the police station, he said to the officer, "Primm jumped on the wrong boy. I don't bother nobody, and I will get the son of a b———." Afterwards, about ten o'clock, the appellant was seen walking back and forth in the space between the sidewalk and the curbing for thirty or forty minutes. As Primm came along, the appellant fired upon him with a pistol. Primm ran, and appellant followed, shooting him until Primm entered the Central Hotel, and appellant fired one shot after Primm got into the hotel. Appellant began shooting at Primm when the latter was about twenty or twenty-five feet from the entrance of the hotel. The appellant fired four shots. Primm did not have a pistol on his person at the time the appellant fired upon him.

The testimony, in brief, for the State tended to prove that, after the fight, which occurred about eight o'clock, between the appellant and Primm, the appellant armed himself and stationed himself on the street, waiting for Primm to come along, in order to kill him. Primm was shot in the back and right side. He died the next morning about five o'clock. A witness, who was called to attend Primm after he was shot, stated that Primm asked witness what he thought of his condition, and witness told Primm that it was pretty bad. Witness was asked: "Q. Do you know whether or not he had been informed by you or Dr. Niehuss, in your presence, that his wounds were fatal?" Witness answered, "Yes sir; I remember of telling him that he was in a serious condition." Primm asked witness a time or two if witness thought there was any hope for him. Primm said he hoped there was a chance.

The justice of the peace was requested by the prosecuting attorney to attend at the bedside of Primm to hear his dying declaration. The prosecuting attorney asked Primm if he realized that he was fatally shot, and Primm answered that he did. Witness then wrote down the statement of Primm, which was to the effect that appellant shot him twice with a pistol. They were in a fight

about forty-five minutes before, and Primm was only fighting with his fists. Primm started out of the hotel on the street, and met appellant, who shot him before he could get away. Appellant had threatened to whip Primm about three or four days before the fist fight. When Primm started out of the hotel, he met appellant; and when he saw appellant go for his pistol, Primm ran.

The testimony of appellant and the witnesses in his behalf tended to show that the appellant shot Primm in self-defense; that he heard, after he and Primm had the fight in the early part of the evening, that Primm was looking for him with a knife, and that Primm came around the corner and had his right hand dropped down by his side. Appellant saw something bright in his hand, which he took to be a knife, and began to shoot. He shot to protect himself. He shot four times.

The court gave instructions on the degrees of criminal homicide and on the law of self-defense. The appellant, in his motion for a new trial, objected to the giving of several of these instructions, which we have examined, and find that they correctly declared the law in accordance with many previous decisions of this court. It is therefore unnecessary to comment further upon them.

One of the grounds of appellant's motion for a new trial is that the court erred in admitting the dying declarations of Primm. There was no error in the ruling of the court in admitting such declaration, and, besides, the verdict of the jury finding the appellant guilty of only involuntary manslaughter shows conclusively that the dying declarations had no weight with the jury. If appellant was guilty at all, and the jury found that he was guilty, then, under the evidence, he could not have been properly convicted of a lower grade of homicide than murder in the first or second degree, or voluntary manslaughter. The killing of Primm, under the circumstances, could not have been involuntary manslaughter, because the appellant shot him with the intent to kill him. The instruction on involuntary manslaughter,

under the undisputed testimony, was abstract. But this error was not prejudicial to the appellant, but, on the contrary, the ruling was in his favor, and therefore he has no right to complain of it.

Finding no reversible error in the record, the judgment must be affirmed.